IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2002

# HILTON JEFFRIES v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 01-534-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2001-02300-COA-R3-CV - Filed December 31, 2002**

---

This appeal involves a prison disciplinary proceeding. A prisoner at the Southeast Regional Correctional Facility was charged with four serious disciplinary infractions. He pleaded guilty to three charges, and a prison disciplinary board found him guilty of the fourth. The board placed the prisoner in punitive segregation for five days and ordered him to pay $810 in restitution from his inmate trust fund account. The prisoner filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County alleging (1) that his guilty pleas had been coerced and (2) that he had been denied due process on the fourth charge by the board's failure to provide him twenty-four hours notice of the hearing and its interference with his opportunity to present exculpatory evidence. The trial court granted the Tennessee Department of Correction's motion for summary judgment and dismissed the prisoner's petition. We have determined that the trial court erred by granting the summary judgment with regard to the $810 restitution order because the record contains material factual disputes regarding whether the prisoner waived his right to twenty-four hours notice of the hearing and whether the board refused to permit him to call an exculpatory witness.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL , JJ., joined.

Hilton Jeffries, Only, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Dawn Jordan, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

## I.

Hilton G. Jeffries was indicted for aggravated rape in 1987 after his eight-year-old daughter complained to her step-mother that he had repeatedly raped and engaged in oral sex with her. A Montgomery County jury found him guilty of aggravated rape and sentenced him to serve forty years

in the state penitentiary.[1] Mr. Jeffries was eventually housed in the Southeastern Tennessee State Regional Correctional Facility in Pikeville.

After arriving at the Pikeville facility, Mr. Jeffries struck up a friendship with Shelby A. Frazier, a prison employee who worked in the same area where his prison job was located. After the warden of the institution declined Mr. Jeffries's request for assistance on some sort of personal matter, Ms. Frazier took it upon herself to begin helping Mr. Jeffries. Accordingly, Ms. Frazier loaned Mr. Jeffries her cellular telephone which he used to make personal calls to Florida and other locations at Ms. Frazier's expense. She provided Mr. Jeffries with paper, envelopes, and mailing labels that she had purchased for him from local retailers. Ms. Frazier also used a state-owned copying machine during her working hours to make copies for Mr. Jeffries.

Sometime in 2000, the institution began an internal investigation into Ms. Frazier's relationship with Mr. Jeffries. During this investigation, an internal affairs officer discovered the cellular telephone, the office supplies, and the copied documents in Mr. Jeffries's work area. The officer filed disciplinary charges against both Ms. Frazier and Mr. Jeffries. On November 28, 2000, Mr. Jeffries received written notice that he had been charged with four violations of institutional rules: (1) possession of contraband for having a cell phone; (2) abuse of telephone privileges for using the cell phone; (3) solicitation of staff for striking up a friendship with Ms. Frazier and using her for his personal gain; and (4) larceny for acquiring office supplies and using a state-owned copy machine.

Mr. Jeffries was immediately transferred to the Northeast Correctional Complex in Mountain City; however, he was returned to the Pikeville facility on November 29, 2000 for a disciplinary hearing. At that time, Mr. Jeffries pleaded guilty to the possession of contraband, the abuse of telephone privileges, and the solicitation of staff charges. A prison disciplinary board then conducted a hearing on the larceny charge and ultimately found Mr. Jeffries guilty. The board ordered Mr. Jeffries to serve five days in punitive segregation and pay $810 restitution for the office supplies and the cost of the copies made on the prison's copying machine.

On February 16, 2001, Mr. Jeffries filed a petition for common-law writ of certiorari[2] in the Chancery Court for Davidson County.[3] In addition to alleging that his three guilty pleas had been coerced, he alleged that the disciplinary board denied him due process by disregarding the

---

[1]Mr. Jeffries's conviction was affirmed on appeal. *State v. Jefferies*, No. C.C.A. 88-131-III, 1989 WL 4938, at *1 (Tenn. Crim. App. Jan. 24, 1989). His two later attempts to collaterally attack his conviction were unsuccessful. *Jefferies v. State*, No. 01C01-9502-CC-00044, 1995 WL 408255 (Tenn. Crim. App. July 6, 1995) *perm. app. denied* (Tenn. Nov. 27, 1995); *Jefferies v. Bowlen*, No. 03C01-9708-CC-00345, 1998 WL 473885 (Tenn. Crim. App. Aug. 14, 1998) (No Tenn. R. App. P. 11 application filed). In his three appeals to the Tennessee Court of Criminal Appeals, Mr. Jeffries's name appears as "Hilton Glen Jefferies."

[2]Mr. Jeffries also sought a statutory writ of certiorari. Because the common-law writ of certiorari is the proper vehicle for reviewing the actions of a prison disciplinary board, we will not consider this claim.

[3]Mr. Jeffries filed his petition in the wrong county. Tenn. Code Ann. § 41-21-803 (1997) required the petition to be filed in Bledsoe County where the Pikeville facility is located. *Hawkins v. Tennessee Dep't of Corr.*, No. M2001-00473-COA-R3-CV, 2002 WL 1677718, at *7-8 (Tenn. Ct. App. July, 25, 2002) (No Tenn. R. App. P. 11 application filed). We will not vacate the judgment in this case because Mr. Jeffries filed his petition before we decided *Hawkins v. Tennessee Dep't of Corr.* and because neither party questioned venue in the trial court.

Department's Uniform Disciplinary Procedures in two ways. First, he asserted that he had not been given the required twenty-four hours notice of the charges and that he was forced to proceed with the hearing even after he refused to waive his right to notice. Second, he asserted that he was denied the right to present exculpatory evidence at the hearing.

On July 10, 2001, after obtaining two 45-day extensions for reasons that are not apparent in the record,[4] the Office of the Attorney General responded to Mr. Jeffries's petition. This response consisted of certified copies of the institutional records regarding Mr. Jeffries's four disciplinary offenses, an affidavit of the chairperson of the prison disciplinary board, a motion for summary judgment,[5] and a statement of undisputed facts. Mr. Jeffries responded to the Attorney General's motion by filing his own affidavit as well as two affidavits by Ms. Frazier[6] and a copy of a letter from the warden of the Southeast Regional Correctional Facility stating that Ms. Frazier had been terminated for providing the office supplies which served the basis for the punishment Mr. Jeffries received. On September 5, 2001, the trial court entered an order granting the Department a summary judgment and dismissing Mr. Jeffries's petition without explanation. Mr. Jeffries has appealed.

## II.
### THE STANDARD OF REVIEW

We cannot review this appeal using the standards of review normally associated with common-law writs of certiorari because the Department elected to file a motion for summary judgment to dispose of Mr. Jeffries's petition. This is a curious tactical choice in light of the fact that the Department had filed its complete record of Mr. Jeffries's hearing before the prison disciplinary board. Ordinarily, once the complete record has been filed, the reviewing court may proceed to determine whether the petitioner is entitled to relief without any further motions and, if the court chooses, without a hearing. In doing so, the reviewing court may resolve any material factual disputes that may exist in the record.

The Department's decision to move for a summary judgment prevents the trial court from simply reviewing the record to determine whether the petitioner is entitled to relief because Tenn. R. Civ. P. 56 does not permit the trial court to grant the motion if the record contains material factual disputes. Thus, by filing the motion, the Department has introduced a consideration into the decision-making process -- the existence of material factual disputes -- that is not ordinarily part of a certiorari proceeding. The Department has elected to use Tenn. R. Civ. P. 56 as the vehicle for disposing of Mr. Jeffries's petition. Therefore, the Department must dance by the tune it has asked the piper to play.

---

[4]This is not the first occasion when the Office of the Attorney General has failed to file a timely request for an extension of time to answer a prisoner's petition. *Hickman v. Tennessee Bd. of Paroles*, 78 S.W.3d 285, 288 (Tenn. Ct. App. 2001).

[5]Regrettably, the motion for summary judgment, like so many similar motions filed by the Office of the Attorney General in cases of this sort, failed to comply with Tenn. R. Civ. P. 7.02 because it did not state with particularity the grounds for the motion. *See, e.g., Hickman v. Tennessee Bd. of Paroles*, 78 S.W.3d at 287; *Pendleton v. Mills*, 73 S.W.3d 115, 119 n.7 (Tenn. Ct. App. 2001); *Robinson v. Clement*, 65 S.W.3d 632, 635 n.2 (Tenn. Ct. App. 2001).

[6]Ms. Frazier states in the affidavits that she would have testified that Mr. Jeffries never solicited her assistance and he had not requested her to provide him the office supplies or to use the State's copying machine.

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Pendleton v. Mills*, 73 S.W.3d at 121; *Armoneit v. Elliott Crane Serv.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n. 5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215, n. 6. A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment

is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App.1998).

## III.
### THE GUILTY PLEAS

We turn first to Mr. Jeffries's claim that his guilty pleas to the charges of possession of contraband, abuse of telephone privileges, and solicitation of staff were coerced. He asserts that the internal affairs officer threatened him by telling him that he should plead guilty to avoid being placed in maximum security, being charged with more serious offenses, and being prevented from defending himself. The Department has presented no evidence to rebut these assertions.

An otherwise valid guilty plea is not rendered involuntary simply because it is motivated by an accused's desire to limit the penalty he or she is facing. *Newsome v. State*, 995 S.W.2d 129, 134 (Tenn. Crim. App. 1998); *Hicks v. State*, 983 S.W.2d 240, 248 (Tenn. Crim. App. 1998). Thus, an accused who makes a rational decision to plead guilty to avoid threatened harsher punishment cannot later assert that his or her guilty plea was involuntary. *Lovato v. State*, No. 03C01-9108-CR-00244, 1992 WL 10896, at * 3 (Tenn. Crim. App. Jan. 28, 1992), *perm. app. denied* (Tenn. May 18, 1992).

There is nothing arbitrary or illegal about threatening a prisoner with the harsher punishment in order to induce a guilty plea to a disciplinary infraction. Despite the fact that Mr. Jeffries's assertion that he was threatened with harsher punishment unless he pleaded guilty to three of the disciplinary charges stands uncontradicted, it is also uncontradicted that Mr. Jeffries made a knowing and rational choice to plead guilty in order to receive more lenient punishment. In light of this decision, Mr. Jeffries is in no position to challenge the voluntariness of his guilty pleas to three of the four disciplinary charges filed against him.

## IV.
### THE ALLEGED DUE PROCESS VIOLATIONS

Mr. Jeffries also asserts that the prison disciplinary board violated his due process rights with regard to the larceny charge by failing to abide by the Department's Uniform Disciplinary Procedures. The Department's response is two-fold. First, the Department denies that the disciplinary board failed to comply with the Uniform Disciplinary Procedures. Second, relying on *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), it argues that any possible departure from the Uniform Disciplinary Procedures cannot provide the basis for a due process claim because the punishment Mr. Jeffries received did not impose an atypical and significant hardship on him.

Because the trial court failed to explain the legal basis for its decision to grant the Department's motion for summary judgment, we presume that it must have agreed with both of the Department's theories. We have determined that the Department's and the trial court's reliance on *Sandin v. Conner* is misplaced. We have also determined that the record contains material factual disputes regarding the Department's compliance with its Uniform Disciplinary Procedures.

**A.**
**The Application of *Sandin v. Conner***

Denial of due process claims such as the one Mr. Jeffries presents in this case are analyzed using a two-part inquiry. The first question is whether the plaintiff has identified a "liberty" or "property" interest that is entitled to protection by the Due Process Clause.[7] An affirmative answer to this question requires the consideration of a second question – what process is due under the particular circumstances? *Board of Regents v. Roth*, 408 U.S. 564, 571-73, 92 S. Ct. 2701, 2706-07 (1972). The answer to the second question is situational because due process is a flexible concept that calls for only those procedural protections that the particular situation demands. *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 12-13, 99 S. Ct. 2100, 2106 (1979); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972).

It is axiomatic that the Due Process Clause is not triggered by the deprivation of an interest that is neither a liberty interest nor a property interest. *Rowe v. Board of Educ.*, 938 S.W.2d 351, 354 (Tenn. 1996); *Robinson v. Clement*, 65 S.W.3d at 636. In the context of litigation such as this case, the United States Supreme Court has held that state prisoners do not have a liberty interest in the procedural rights created by internal prison disciplinary regulations unless the punishment they receive "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 483-84, 715 S.Ct. at 2300. Accordingly, the fate of the due process claims of a prisoner seeking judicial review of internal disciplinary proceedings depends upon the punishment the prisoner received.

The Tennessee Supreme Court has yet to address the application of *Sandin v. Conner* to common-law certiorari proceedings such as the one involved in this case. However, many members of this court have embraced the decision and have used it frequently to dispose of petitions filed by prisoners seeking judicial review of prison disciplinary proceedings. *See, e.g., Willis v. Tennessee Dep't of Corr.*, No. M2000-01397-COA-R3-CV, 2002 WL 1189730, at *4 (Tenn. Ct. App. June 5, 2002) *perm. app. granted* (Tenn. Dec. 9, 2002); *Reid v. Sundquist*, No. 01A01-9709-CH-00494, 1998 WL 83669, at *1 (Tenn. Ct. App. Feb. 27, 1998) (No Tenn. R. App. P. 11 application filed). Typically, these cases hold that placement in maximum security, the loss of good time credits, the loss of a prison job, and small fines, either separately or in combination, do not trigger due process concerns because the punishments do not impose an atypical and significant hardship on the prisoner in relation to the ordinary incidents of prison life.[8]

This court currently differs on the length of *Sandin v. Conner*'s reach. *Willis v. Tennessee Dep't. of Corr.*, 2002 WL 1189730, at *15 (Koch, J., dissenting). However these differences are

---

[7]U.S. Const. amend. XIV, § 1.

[8]*Robinson v. Clement*, 65 S.W.3d at 637 (twenty days in punitive segregation, a $5 fine, and loss of a prison job); *Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 WL 1346250, at *3 (Tenn. Ct. App. Nov. 2, 2001) (No Tenn. R. App. P. 11 application filed) (five days in punitive segregation, suspended for sixty days, and $20 fine); *Seals v. Bowlen*, 2001 WL 840271, at *6 (placement in maximum security, $5 fine, ten days in punitive segregation, and loss of one month of good time credits); *Buford v. Tennessee Dep't of Corr.*, No. M1998-00157-COA-R3-CV, 1999 WL 1015672, at *5 (Tenn. Ct. App. Nov.10, 1999) (No Tenn. R. App. P. 11 application filed) (fifteen days in punitive segregation, $4 fine, and four-month package restriction); *Blackmon v. Campbell*, No. 01A01-9807-CH-00361, 1999 WL 85518, at *2 (Tenn. Ct. App. Feb. 23, 1999) (No Tenn. R. App. P. 11 application filed) (removal from a prison job).

limited to the application of *Sandin v. Conner*'s reasoning in cases where a prisoner claims the loss of a liberty interest based on the denial of procedural rights in prison disciplinary hearings. We have not heretofore directly considered the application of *Sandin v. Conner*'s reasoning to punishment that involves the loss of a property interest. We now conclude that *Sandin v. Conner* does not apply to a prisoner's due process claims predicated on the loss of a property interest.

*Sandin v. Conner*'s focus on "freedom from restraint" cannot be applied in the context of a taking of a prisoner's property. Its central holding that due process is not necessary as long as the prisoner's punishment is not disproportionate to the rigors of prison life does not apply when the actions of a prison official deprive a prisoner of his or her property. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995); *Arney v. Simmons*, 923 F. Supp. 173, 177, n. 4 (D. Kan. 1996); *Wenzler v. Warden of G.R.C.C.*, 949 F. Supp. 399, 402, n. 1 (E.D. Va. 1996).[9] Thus, a prison disciplinary board must follow all applicable procedural rules when it imposes a money judgment against an inmate if the judgment deprives the prisoner of a property interest.

State prisoners in Tennessee have a property interest in the funds in their prison trust fund accounts.[10] While the Department has the authority to withdraw money from a prisoner's account to cover various costs and fees, the prisoner still retains a property interest in the money in his account. *See* Tenn. Code Ann. §§ 40-25-143, 41-21-237 (2002); Tenn. Dep't Corr. Policy No. 208.01. Therefore, the due process clause protects a prisoner's property interest in his or her trust fund account, and the Department cannot take that money without due process of law unless the

---

[9] The federal courts are split on whether the rationale of *Sandin v. Conner* should be extended to property interest claims arising from prison conditions. In addition to the Fifth Circuit, the Sixth and Ninth Circuits have suggested, without directly holding, that a prisoner's property interests are not affected by *Sandin v. Conner*. In *Woodard v. Ohio Adult Parole Auth.*, 107 F.3d 1178, 1182-83 (6th Cir. 1997), *rev'd on other grounds*, 523 U.S. 272, 118 S. Ct. 1244, 140 L.Ed.2d 387 (1998), the Sixth Circuit noted that "the Supreme Court has made it clear [in *Sandin v. Conner*] that both state law and the Due Process Clause itself may create [a liberty] interest," while "according to prevailing doctrine, state law controls as to the existence of a property interest." The Ninth Circuit concluded in an unpublished opinion that under *Sandin v. Conner*, a prisoner "had no liberty interest in his prison job," but it ruled that the prisoner had no property interest in his prison job because state law left the employment of prisoners to the discretion of prison officials and the prisoner "failed to cite to any prison regulation which mandates a particular classification." *Martin v. Upchurch*, 67 F.3d 307, No. 93-16907, 1995 WL 563744, at *2, n. 2 (9th Cir. Sept. 13, 1995) (unpublished opinion). On the other side of the debate, the Tenth Circuit has expressly held that *Sandin v. Conner*'s atypical-and-significant-deprivation rationale applies to property claims by prisoners. *Cosco v. Uphoff*, 195 F.3d 1221,1223-24 (10th Cir. 1999). The Seventh Circuit has suggested, without directly holding, that *Sandin v. Conner* controls property claims by prisoners. *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996); *Logan v. Gillam*, No. 94-3794, 96 F.3d 1450, 1996 WL 508618, at *3 (7th Cir. Aug. 29, 1996) (unpublished opinion).

[10] Although we are aware of authority to the contrary, *i.e. Washlefske v. Winston*, 234 F.3d 179, 185-86 (4th Cir. 2000), *cert denied* 532 U.S. 983, 121 S.Ct. 1627 (2001), we have determined that the better reasoned position is that prisoners have a property interest in the funds in their inmate trust accounts. *Singleton v. Page*, No. 96-2637, 202 F.3d 274, 1999 WL 1054594, at *1 (7th Cir. Nov. 17, 1999) (unpublished opinion); *Schneider v. California Dep't. of Corr.*, 151 F.3d 1194, 1201 (9th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997); *Scott v. Angelone*, No. CV-90-00589-ECR, 980 F.2d 738, 1992 WL 354598, at *2 (9th Cir. Nov. 27, 1992) (unpublished opinion); *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989); *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986); *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985).

statutes or the Department's policies provide otherwise.[11] It follows, therefore, that Mr. Jeffries is entitled to relief if the prison disciplinary board infringed upon his due process rights by failing to follow the Uniform Disciplinary Procedures when it convicted him of larceny and ordered that $810 be deducted from his inmate trust fund account as restitution.

Not every departure from the Uniform Disciplinary Procedures amounts to a due process violation warranting relief through a writ of common-law certiorari. Tenn. Dep't Corr. Policy No. 502.01(V) itself provides that "minor deviations" from the procedures that do not prejudice the prisoner do not require dismissal of the disciplinary offense. To trigger judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing.

## B.
## The $810 Restitution Order

Based on our unanimous decision that *Sandin v. Conner* does not apply to orders depriving prisoners of property interests, we proceed to the merits of Mr. Jeffries's claims regarding the $810 restitution order. Mr. Jeffries asserts that he was denied due process in the hearing on the larceny charge in two ways. First, he alleges that he did not receive twenty-four hours notice of the hearing as required by Tenn. Dep't Corr. Policy No. 502.01(VI)(A)(3)(c). Second, he alleges that the disciplinary board would not permit him to present exculpatory evidence as permitted by Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(c)(6).

The Department responds by asserting categorically that it afforded Mr. Jeffries all the procedural safeguards to which he was entitled under the Uniform Disciplinary Procedures. It also asserts that Mr. Jeffries waived his right to present exculpatory evidence. The Department supported these claims in the trial court by filing (1) certified copies of the TOMIS disciplinary report and the "Disciplinary Report Hearing Summary" for the November 29, 2000 hearing regarding Mr. Jeffries's larceny charge and (2) an affidavit prepared by the chairperson of the prison disciplinary board.[12] We have determined that these materials do not support the Department's arguments.

---

[11] For instance, Tenn. Dep't Corr. Policy No. 208.01(VI)(J) states that "[i]nterest earned from trust fund investments will only be utilized to purchase recreational supplies that directly benefit the majority of the inmate population." The Department may also require a prisoner to contribute toward the cost of his or her care in accordance with Tenn. Code Ann. § 41-21-905 (Supp. 2001). Following a prisoner's release, the Department will send the prisoner a check for the balance of his or her trust fund account after deducting any outstanding obligations. Tenn. Dep't Corr. Policy No. 208.01(VI)(F).

[12] The admissibility and efficacy of this affidavit are open to question. In certiorari proceedings, judicial review is generally limited to the record developed by the tribunal below, and the tribunal is generally bound by its own record. In accordance with Tenn. Code Ann. § 27-9-111(b) (2000), parties may introduce additional evidence regarding fraud, corruption, or whether the tribunal exceeded its jurisdiction or otherwise acted illegally. *Hemontolor v. Wilson County Bd. of Zoning App.*, 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994); *Armstrong v. Board of Dir. of Fayette County Gen. Hosp.*, 553 S.W.2d 77, 80 (Tenn. Ct. App. 1976). Additional evidence regarding procedural irregularities that do not appear in the tribunal's record may also be introduced. *Bienz v. City of Dayton*, 566 P.2d 904, 922 (Or. Ct. App. 1977). However, additional evidence may not be used to impeach or contradict matters reflected in the lower tribunal's record unless there is a claim that the record does not accurately reflect the proceedings before the lower tribunal. *See Commonwealth v. Blose*, 53 Pa. D. & C. 2d 106, 121-22, 1971 WL 14242, at *10 (Pa. Com. Pl. 1971).

**1.**
**The Notice of the Hearing**

Tenn. Dep't Corr. Policy No. 502.01(VI)(A)(3)(c) states that "[n]o disciplinary hearing shall be held in less than twenty-four hours after the inmate has been charged with a disciplinary infraction, unless a more prompt disposition is requested by the subject inmate and he/she waives the right to a twenty-four (24) hour notice in writing." The policy reflects the United States Supreme Court's conclusion that prisoners charged with disciplinary infractions are entitled to "no less than 24 hours" written notice prior to a disciplinary board hearing. *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S. Ct. 2963, 2979 (1974).

The TOMIS disciplinary report involving the larceny infraction states that Mr. Jeffries was provided written notice of the charge at 2:11 P.M. on November 28, 2000 and that he refused to sign the report acknowledging that he received it. The Disciplinary Report Hearing Summary of the November 29, 2000 hearing on the larceny infraction does not reflect the time that the hearing convened. However, it contains a notation confirming that Mr. Jeffries was given the "offense citation" on November 28, 2000. It also reflects that Mr. Jeffries did not waive his right to twenty-four hours notice because (1) he did not sign the summary in the space provided acknowledging that he waived this right and (2) the summary does not contain a notation by the chairperson that Mr. Jeffries waived his right to notice.[13] In fact, on the signature line for acknowledging a waiver of the right to notice, someone, presumably the chairperson, wrote the word "given" in handwriting that clearly differs from Mr. Jeffries's signature.

Because the Department does not insist that Mr. Jeffries waived his right to twenty-four hours notice, the pivotal factual issue regarding Mr. Jeffries's notice claim is whether the disciplinary hearing on the larceny infraction commenced before or after 2:11 P.M. on November 29, 2000. By asserting that he did not receive adequate written notice, Mr. Jeffries is necessarily asserting that the hearing commenced before 2:11 P.M. Similarly, by asserting that Mr. Jeffries received the notice required by the Uniform Disciplinary Procedures, the Department is necessarily asserting that the hearing commenced after 2:11 P.M.

Nothing in this record provides an authoritative basis for resolving this factual impasse. The hearing summary does not state when the hearing commenced, and the chairperson's affidavit is equally silent on the point. With the evidence in equipoise, the trial court should have denied the Department's motion for summary judgment with regard to Mr. Jeffries's notice claim because the Department failed to demonstrate the absence of material factual disputes regarding the time when the disciplinary hearing commenced.

**2.**
**The Waiver of the Opportunity to Present Exculpatory Evidence**

The Uniform Disciplinary Procedures also afford prisoners facing disciplinary charges with a limited right to present exculpatory evidence. Tenn. Dept's Corr. Policy No. 501.02(VI)(E)(2)

---

[13]The chairperson of a disciplinary board has an affirmative obligation to inquire whether the prisoner has waived his or her right to twenty-four hours notice and to record the inmate's answer "in the findings of the board." Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(a)(1).

(c)(6) provides that "[t]he inmate shall be permitted to present the testimony of relevant witness(es), unless allowing a witness to appear would pose a threat to institutional safety or order." This policy reflects the United States Supreme Court's conclusion that prisoners charged with disciplinary offenses "should be allowed to call witnesses and present documentary evidence in [their] defense when permitting [them] to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. at 566, 94 S. Ct. at 2979.

Mr. Jeffries asserts that he was deprived of due process by being prevented from calling witnesses on his behalf and that he did not waive this right at the November 29, 2000 hearing. The Disciplinary Report Hearing Summary reflects only that Mr. Jeffries declined to sign the written acknowledgment that he had waived his right to call witnesses on his behalf.[14] It does not reflect, by notation of the chairperson or otherwise, that Mr. Jeffries orally waived his right to call witnesses during the hearing. However, the chairperson of the disciplinary hearing board later prepared an affidavit stating that "[i]nmate Jeffries initially requested to have witnesses present, but eventually decided against calling any witnesses." In response, Mr. Jeffries submitted his own affidavit asserting that "[p]etitioner was not allowed to call any witnesses in his behalf, was denied the right to present documentary proof of his innocence of the charges against him [Sworn Affidavit of Shelby A. Frazier], and was threatened by the reporting official."

Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(a) requires the chairperson of a prison disciplinary board "in the findings of the board" the factual information regarding a prisoner's waiver of the procedural rights identified in *Wolff v. McDonnell*. This policy serves at least three beneficial purposes. First, it provides definitive, persuasive evidence that will avoid factual disputes like this one should a prisoner seek judicial review of the disciplinary board's action.[15] Second, it protects the prisoner against collateral consequences stemming from a misunderstanding of the proceeding. Third, it helps ensure that prison officials, faced with possible scrutiny by state officials, the public, and the courts, will act fairly. *Wolff v. McDonnell*, 418 U.S. at 565, 94 S. Ct. at 2979.

Making a record of this sort is not burdensome. The hearing summary form contains preprinted waivers of the right to notice, the right to present exculpatory evidence, and the right to have the reporting official present which need only be signed by the prisoner to acknowledge that he or she has waived one or all of these rights. If the prisoner declines to sign the hearing summary form acknowledging that he or she has waived one or more of these rights, the chairperson need only record on the form that the prisoner waived the right but declined to sign the form.

In this case, the chairperson of the prison disciplinary board did not comply with the requirements of Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(a). The only information in the hearing summary regarding Mr. Jeffries's larceny infraction is an ambiguous, handwritten statement

---

[14] The signature line for acknowledging the waiver of this right contains a notation "refused to sign" in handwriting that does not resemble Mr. Jeffries's signature.

[15] In the absence of an authoritative record, the reviewing courts have no practical avenue for resolving factual disputes like the one involved in this case. Remanding the case to the trial court for further review of the record will gain little because credibility determinations cannot be made on affidavits alone. It would be not only impractical but also unwise to order the prisoner and the chairperson of the prison disciplinary board to appear personally to enable the trial court to make a credibility determination. These practical constraints underscore the necessity of compliance with Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(a)(3).

that Mr. Jeffries "refused to sign" the form. This notation is equally consistent with the inference that Mr. Jeffries refused to sign the form because he refused to waive his right to call witnesses and with the inference that he waived his right to call witnesses but nonetheless refused to sign the form.

The Department's Uniform Disciplinary Procedures place the onus on the chairperson to make a contemporaneous record of a prisoner's waiver of the fundamental rights identified in *Wolff v. McDonnell*. The Department's defenses to a prisoner's petition for common-law writ of certiorari must, therefore, stand or fall on the record its employees have prepared.[16] Failure to adequately document a prisoner's waiver of one or more of these rights creates two related persuasive inferences: first, that the prisoner did not waive his or her rights and second, that the prisoner was, therefore, not afforded the rights purportedly waived.

The ambiguous notation on the summary of the hearing on Mr. Jeffries's larceny infraction constitutes a failure to adequately document Mr. Jeffries's purported waiver of his right to present exculpatory evidence. In the absence of an adequate contemporaneous record of his waiver, we conclude that the Department has not established its claim that Mr. Jeffries waived his right to present exculpatory evidence. Therefore, the trial court erred by granting the summary judgment dismissing Mr. Jeffries's challenge to his conviction on the larceny infraction.

We have also concluded that the record as it stands demonstrates that Mr. Jeffries is entitled to a judgment as a matter of law. Failure to afford constitutionally protected rights to a prisoner facing the loss of a property interest amounts to an illegality for the purpose of determining whether relief pursuant to a common-law writ of certiorari is warranted. Because the Department failed to prove that Mr. Jeffries waived his right to present exculpatory evidence, Mr. Jeffries's claim that he was prevented from presenting exculpatory evidence stands essentially unrebutted. Accordingly, he has adequately demonstrated that the Department acted illegally by preventing him from presenting exculpatory evidence. On remand, we direct the trial court to enter an order vacating the November 29, 2000 decision of the prison disciplinary board finding Mr. Jeffries guilty of the larceny infraction and remanding the proceeding to the Department with directions either to dismiss the larceny charge against Mr. Jeffries or to afford him a hearing consistent with the requirements of due process.

## C.
### The Five Days in Punitive Segregation

We must, as a final matter, address Mr. Jeffries's challenge to the prison disciplinary board's decision to sentence him to five days in punitive segregation. Because we have determined that Mr. Jeffries's conviction on the larceny infraction must be vacated with regard to the $810 restitution order, we unanimously find that the portion of the board's order sentencing him to five days in

---

[16]An after-the-fact affidavit providing more detailed information regarding a purported waiver than the information appearing in the hearing summery does not cure the defect. It is contrary to Tenn. Dep't Corr. Policy No. 502.01(VI)(E)(2)(a). In addition, affidavits of this sort precipitate factual disputes that are not easily resolvable in a common-law certiorari proceeding.

punitive segregation must likewise be vacated.[17] A conviction of a disciplinary infraction that is invalid for one purpose is invalid for all purposes. Therefore, on remand, we direct the trial court to likewise vacate the board's decision to sentence Mr. Jeffries to five days in punitive segregation and to remand the proceeding to the Department for further proceedings consistent with this opinion.

## V.

We affirm the dismissal of Mr. Jeffries's claims regarding his three guilty pleas, and we reverse the dismissal of his claims regarding his conviction on the larceny disciplinary infraction. We remand the case to the trial court with directions (1) to enter an order vacating the November 29, 2000 decision of the prison disciplinary board finding Mr. Jeffries guilty of the larceny infraction and remanding and (2) to direct the Department either to dismiss the larceny disciplinary charge against Mr. Jeffries or to afford him a hearing consistent with due process and the Uniform Disciplinary Procedures. We also tax the costs of this appeal to the Tennessee Department of Correction.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[17]This panel's decision regarding Mr. Jeffries's sentence to five days in punitive segregation would have been different had punitive segregation been the only punishment Mr. Jeffries received. In that circumstance, Judges Cain and Cottrell, relying on Judge Cottrell's majority opinion in *Willis v. Tennessee Dep't. of Corr.*, would have concluded that the trial court properly dismissed Mr. Jeffries's claims regarding his five-day sentence in punitive segregation because the sentence does not infringe upon his liberty interests. Judge Koch would have concluded that the trial court erred by dismissing these claims for two reasons. First, the record contains a genuine dispute of material fact regarding the adequacy of the notice Mr. Jeffries received of the hearing on the larceny charge. Second, the record does not support the Department's claim that Mr. Jeffries waived his right to present exculpatory evidence.