IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief March 6, 2006

## THOMAS JACKSON v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

A Direct Appeal from the Chancery Court for Lauderdale County
No. 12978-38-85     The Honorable Martha B. Brasfield, Chancellor

No. W2005-02240-COA-R3-CV - Filed June 8, 2006

This appeal involves a petition for writ of certiorari filed by a state prisoner.  The prisoner was found guilty of money laundering by the prison Disciplinary Board, and placed in punitive segregation for ten days, ordered to pay a $5.00 fine, and was recommended him for involuntary administration segregation.  The prisoner filed a petition for common law writ of certiorari in the Chancery Court of Lauderdale County alleging that the Disciplinary Board committed multiple violations of its own disciplinary procedures.  The trial court issued an order granting certiorari, and respondents filed a certified copy of the disciplinary record for the prisoner with the trial court.  After reviewing the record, the trial court held that the Petitioner had failed to prove that the Disciplinary Board exceeded its jurisdiction or acted illegally, fraudulently or arbitrarily, and quashed the petition. Prisoner appeals.  We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Thomas Jackson, Pro Se

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Jennifer L. Brenner, Office of Attorney General for Appellees, Tennessee Department of Correction, Sgt. Lucy Simpson, Warden David G. Mills and George M. Little

OPINION

Thomas Jackson ("Jackson" or "Petitioner") is an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee.  On January 14, 2004, Jackson was segregated from the general population of the prison pending an investigation into a money laundering scheme, allegedly being carried out at WTSP.  On the same day, January 14, 2004, Jackson received written

notice that he had been charged with a violation of the state money laundering law, T.C.A. § 39-14-901.[1]  The Disciplinary Report reads as follows:

[1] Money Laundering Offenses.
§ 39-14-901.
This part shall be known as the "Money Laundering Act of 1996."

§ 39-14-903. Criminal penalties
(a)(1) It is an offense to knowingly use, conspire to use or attempt to use proceeds derived directly or indirectly from a specified unlawful activity to conduct or attempt to conduct a financial transaction or make other disposition with the intent to conceal or disguise the nature, location, source, ownership or control of the criminally derived proceeds.
(2) A violation of this subsection (a) is a Class B felony.
(b)(1) It is an offense to knowingly use proceeds derived directly or indirectly from a specified unlawful activity with the intent to promote, in whole or in part, the carrying on of a specified unlawful activity.
(2) A violation of this subsection (b) is a Class B felony.
(c)(1) It is an offense to knowingly conduct, conspire to conduct, or attempt to conduct a financial transaction or make other disposition involving property or proceeds represented by a law enforcement officer, or by another at the direction of a law enforcement officer, to be the property or proceeds derived from a specified unlawful activity with the intent to conceal or disguise the nature, location, source, ownership or control of the criminally derived proceeds or with the intent to promote the carrying on of a specified unlawful activity.
(2) The provisions of this section shall not apply to any transaction conducted, or attempted, by a person, corporation or financial institution, in the ordinary course of business, which is deemed by the person, corporation or financial institution to be a suspicious transaction or transactions, whether reportable or not under any state or federal currency transaction reporting or recording requirements, where:

1. (A) Such person or corporation reports such suspicious transaction, or a similar transaction conducted previously, to any local, state or federal law enforcement official and such report would not violate any attorney-client privilege;
(B) In the case of a financial institution, the financial institution reported the transaction, or a related transaction conducted previously, to the institution's primary regulator or to another regulator or law enforcement official pursuant to the directions of the institution's primary regulator; but only with regard to the person, corporation or financial institution making the report; or

(C) In the case of any other corporation or business entity which reported the transaction or a related transaction conducted previously, to the corporation's or business entity's primary federal or state regulator, any other federal or state regulator or law enforcement official or agency. Failure to so report shall not create an inference that the transaction was a "financial transaction" under this part.
(3) A violation of this subsection (c) is a Class B felony.

(continued...)

An ongoing investigation conducted by Unit 3 & 4 Unit Team and assisted by Captain Russell Kiestler and CPL. Mike Ottinger revealed numerous inmates sending money to the same addresses. The inmates would use the name of a person on their respective visitation lists with an address provided by one of the suspects. The payments involved thousands of dollars and was learned to be payments of extortion, protection and payments for drugs. This was a deliberate attempt to conceal the unlawful activities as well as the proceeds thereof. These actions constitute the crime of money laundering. Therefore, the following inmates are charged with violation of State law, T.C.A. 39-14-901: . . . Thomas Jackson #105316.

Jackson was given a copy and advised of his rights, but refused to sign the report. Jackson's disciplinary hearing was held on January 20, 2004. Jackson was represented by an inmate advisor and submitted a plea of not guilty. The Disciplinary Board (the "Board") heard testimony from Jackson and three correctional employees. Additionally, the Board received statements from confidential informants, and copies of withdrawals and money orders. The Board found Jackson guilty of the charge of money laundering, and sentenced him to ten days in punitive segregation, fined him $5.00, and recommended that Jackson be placed in administrative segregation. Following the hearing, a Disciplinary Report Hearing Summary was prepared. On January 21, 2004, an Administrative Segregation Placement recommendation was prepared by the Board and a copy provided to Petitioner. The recommendation outlined the reasons for administrative placement as:

This inmate was found guilty of violating State Law T.C.A. 39-14-901, wherein it was revealed that numerous inmates were sending money to the same addresses. The payments involved thousands of dollars and it was learned to be payments for Extortion, Protection, and Payments for Drugs. Therefore, the board recommends that this inmate be housed at the highest level for the safety, and security of this institution.

Again, Jackson refused to sign the report. On January 22, 2004, the Warden, David Mills, approved the placement of Jackson into administrative segregation and stated:

After careful review of this recommendation, I must concur with the board. The activities and money transactions involving this inmate

---

[1](...continued)

and others clearly demonstrate he is a threat to the security of WTSP's general population.

On April 19, 2004, Jackson filed a petition for writ of certiorari asking the Chancery Court of Lauderdale County to review the decision of the Disciplinary Board of the WTSP. In his petition for writ of certiorari Jackson alleged multiple violations of the Uniform Disciplinary Procedures by the Board including 1) that the disciplinary Board did not give adequate notice to the Petitioner when it reported multiple rule infractions on a single disciplinary report, 2) that the Board denied him the opportunity to call witnesses and present exculpatory evidence, 3) that the Board failed to segregate witnesses, 4) that the Board denied prisoner the right to be present for the testimony of confidential informants and review confidential documents, 5) that the Board chairperson failed to verify the reliability of the confidential informants, 6) that the Board chairperson failed to prepare a detailed hearing summary record, and 7) that the Board did not provide prisoner with a written statement of the reasons for his placement into administrative segregation, nor allow him an opportunity to present a statement prior to placement in administrative segregation. Jackson asserts that such violations of the Uniform Disciplinary Procedures by the Board substantially prejudiced the outcome of his disciplinary hearing.

On May 18, 2004, the Tennessee Department of Correction, Board Chairperson Sergeant Lucy Simpson, Board Member George M. Little, and Warden David G. Mills (collectively "Respondents") filed a motion to dismiss Jackson's petition for writ of certiorari based on Jackson's failure to comply with the requirements of T.C.A. §§ 27-8-104[2] and 27-8-106.Jackson was allowed to amend his petition to cure the technical defects. On September 30, 2004, the trial court issued an order denying Respondents' motion to dismiss and granting certiorari. On November 29, 2004, Respondents filed a certified copy of the disciplinary record for the Petitioner. On February 24, 2005, the Petitioner filed a motion for summary judgment stating that there were no genuine issues of material fact, and the he was entitled to the issuance of a writ of certiorari because the Board violated procedures, applicable rules and regulations, which resulted in substantial prejudice to him. On March 16, 2005, Respondents filed a response in opposition to Petitioner's motion for summary judgment asserting that a motion for summary judgment was not a proper motion, the Petitioner having initially filed a petition for writ of certiorari. On August 26, 2005, the trial court issued an Order of Dismissal stating that the Petitioner's petition for writ of certiorari failed to state a claim

---

[2] Certiorari and Supersedeas. § 27-8-104. Circuit and chancery courts.
   (a) The judges of the inferior courts of law have the power, in all civil cases, to issue writs of certiorari to remove any cause or transcript thereof from any inferior jurisdiction, on sufficient cause, supported by oath or affirmation.
   (b) The chancellors shall have concurrent jurisdiction with the judges of the circuit courts of this state in granting writs of certiorari and supersedeas removing causes from general sessions courts to the circuit courts.

upon which relief could be granted because the Board did not act illegally, fraudulently or arbitrarily. On September 15, 2005, Petitioner filed an Notice of Appeal and presented the following issues:

1. Whether the Trial Court erred by not ruling on Petitioner's motion for summary judgment prior to dismissing his petition for writ of certiorari?

2. Whether the Respondents filed a complete copy of the certified record of the WTSP Disciplinary Board hearing?

3. Whether the evidence preponderates against the trial court's finding that the WTSP Disciplinary Board did not act illegally, fraudulently or arbitrarily?

The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. *See Rhoden v. State Dep't of Corr.,* 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley,* 894 S.W.2d 294 (Tenn. Crim. App. 1994)). By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief. Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *McCallen v. City of Memphis,* 786 S.W.2d 633, 640 (Tenn. 1990). The reviewing court does not weigh the evidence, but must uphold the board's decision if the board acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the board's findings. *Watts v. Civil Serv. Bd. of Columbia,* 606 S.W.2d 274, 276-77 (Tenn. 1980); *Davison v. Carr,* 659 S.W.2d 361, 363 (Tenn. 1983). These determinations are issues of law. *Watts,* 606 S.W.2d at 277. Since a writ of certiorari is not available as a matter of right, its grant or denial is within the sound discretion of the trial court. Such decisions will not be reversed on appeal unless there is abuse of that discretion. *Hall v. McLesky,* 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001) (citing *Boyce v. Williams,* 389 S.W.2d 272, 277 (1965)).

1. Whether the Trial Court erred by not ruling on Petitioner's motion for summary judgment prior to dismissing his petition for writ of certiorari?

Petitioner argues that the trial court erred in finding that the Board did not act illegally, fraudulently or arbitrarily, resulting in the quashal of his petition for writ of certiorari, prior to ruling on Petitioner's motion for summary judgment. Respondents filed a response to Petitioner's motion for summary judgment, and stated that the motion for summary judgment is not a proper motion when the Petitioner initially filed a petition for writ of certiorari. We agree with Respondents.

The issuance by the trial court of a writ of certiorari is simply a command by the trial court to the inferior tribunal or administrative agency to send the record made before the agency in the proceeding to the court for review of that record. *Gore v. Tennessee Dept. of Correction,* 132

S.W.3d 369, 375 (Tenn. Ct. App. 2003) (citing *Conners v. City of Knoxville,* 189 S.W. 870, 872 (Tenn. 1916)).  Once the complete record has been filed, the reviewing court may proceed to determine whether the petitioner is entitled to relief without any further motions, and if the court chooses, without a hearing*. Jeffries v. Tennessee Dept. of Correction,* 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002).  The trial court was only under the obligation to review the record and determine whether the Board acted illegally, fraudulently, arbitrarily or outside it jurisdiction.  The trial court was under no obligation to dispose of the Petitioner's motion for summary judgment before dismissing his petition.  The trial court, as hereinafter set out, performed its obligation.  This issue is without merit.

2.  Whether the Respondents filed a complete copy of the certified record of the WTSP Disciplinary Board hearing?

Petitioner asserts that the Respondents failed to file a complete record with the trial court, specifically stating that an Administrative Segregation Placement form was missing from the record. However, the record before us contains an Administrative Segregation Placement form submitted by the Board on January 21, 2004 and completed and signed by Warden Mills on January 22, 2004. This issue is without merit.

3.  Whether the evidence preponderates against the trial court's finding that the WTSP Disciplinary Board did not act illegally, fraudulently or arbitrarily?

In his petition for writ of certiorari, Petitioner alleged multiple violations of the Uniform Disciplinary Procedures by the Board, and that such violations substantially prejudiced the outcome of the hearing.  We restate the Petitioner's assignments of error as follows: A) that the Board violated Tennessee Department of Corrections ("TDOC") Policy 502.01 (VI)(E)(3)(f) when it reported multiple rule infractions on a single disciplinary report, which resulted in inadequate notice of the charges against him, B) that the Board violated TDOC Policy 502.01 (VI)(E)(2)(c)(6) when it denied him the opportunity to call witnesses and present exculpatory evidence, C)  that the Board violated TDOC Policy 502.01 (VI)(E)(2)(g) when it  failed to segregate witnesses, D) that the Board violated TDOC Policy 502.01 (VI)(E)(1)(a) and (VI)(E)(2)(c)(3) when it denied Petitioner the right to be present for the testimony of confidential informants and review confidential documents, E) that the Board violated TDOC Policy 502.01 (VI)(E)(2)(e) when the Board chairperson failed to verify the reliability of the confidential informants, F) that the Board violated TDOC Policy 502.01 (VI)(E)(2)(k) when the Board chairperson failed to prepare a detailed hearing summary record, and G) that the Board did not have the authority to impose administrative segregation as an indefinite punishment for the infraction of violating State money laundering laws.

As stated above, a writ of certiorari is not available as a matter of right, its grant or denial is within the sound discretion of the trial court.  Accordingly, a decision by the trial court to quash a petition for writ of certiorari will not be reversed on appeal unless there is abuse of that discretion. *Hall v. McLesky,* 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001) (citing *Boyce v. Williams,* 389 S.W.2d 272, 277 (1965)).  This standard requires that we determine whether the lower court's exercise of its

discretion went beyond the bounds of a fair exercise of discretion. Furthermore, not every departure from the Uniform Disciplinary Procedures amounts to a due process violation warranting relief through a writ of common-law certiorari. *Jeffries v. Tennessee Dept. of Correction,* 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002). TDOC Policy No. 502.01(V) itself provides that "minor deviations" from the procedures that do not prejudice the prisoner do not require dismissal of the disciplinary offense. To trigger judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing. *Id.* We will review Petitioner's allegations of violations of the Uniform Disciplinary Procedures individually.

A. The Petitioner alleges that the Board violated TDOC Policy 502.01 (VI)(E)(3)(f) because the initial Disciplinary Report issued to him on January 14, 2004 was defective in that it did not charge him with a specific rule infraction. Instead, the Petitioner argues, that the report actually described three separate infractions in violation of the policy procedures, and did not describe the manner that the Petitioner violated the rule. The Petitioner claims that as a result he was not given effective written notice of the specific charges against him. TDOC Policy 502.01 (VI)(E)(3)(f) states that "[a] disciplinary report which fails to adequately allege an offense, contains errors, or has not been properly completed shall be dismissed by the board/hearing officer." The Disciplinary Report alleges that the Petitioner's activities included "extortion, protection and payments for drugs." However, the report later states that "[t]hese actions constitute the crime of money laundering. Therefore, the following inmates are charged with violation of State law, T.C.A. 39-14-901." The trial court found that the above description adequately informed the Petitioner of the offense with which he was charged and the record supports that the Petitioner was provided adequate and effective notice of the charge against him.

B. The Petitioner alleges that the Board violated TDOC Policy 502.01 (VI)(E)(2)(c)(6) when it denied him the opportunity to call a witness from the institutional trust fund office to provide evidence of Petitioner's withdrawal receipts and cancelled checks from his trust fund account. TDOC Policy 502.01 (VI)(E)(2)(c)(6) states that "[t]he inmate shall be permitted to present the testimony of relevant witness(es), unless, allowing a witness to appear would pose a threat to institutional safety or order." However, pursuant to TDOC Policy 502.01 (VI)(E)(2)(d)(1), an inmate who wishes to have witnesses present to testify on his behalf at the hearing "shall complete an Inmate Witness Request, CR-3511, and submit it to the chairperson/hearing officer at least twenty-four hours prior to the hearing." As evidenced by the Disciplinary Report Hearing Summary in the record before us, Petitioner did not file a CR-3511 prior to the hearing. There is no evidence to support the Petitioner's allegation that he requested, and was denied, the right to call witnesses. We find that the trial court did not abuse its discretion in finding that the Board did not violate TDOC Policy 502.01 (VI)(E)(2)(c)(6).

C. The Petitioner asserts that the Board violated TDOC Policy 502.01 (VI)(E)(2)(g) when it failed to segregate witnesses. According to the Petitioner, three confidential informants testified together, at the same time, in front of the Board. TDOC Policy 502.01 (VI)(E)(2)(g) provides that

-7-

"[w]hen the testimony of a witness is to be heard by the disciplinary hearing officer/chairperson, all other witnesses, except the accused inmate and advisor shall be excluded from the room." In reference to this charge, the trial court's Order stated:

> TDOC Policy 502.01 (V) states: "POLICY: Fair and impartial disciplinary proceedings will be administered against inmates charged with disciplinary infractions . . . Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show some prejudice as a result and the error would have affected the disposition of the case." The fact that the confidential informants testified and presented evidence at the same time appears to be a minor deviation from TDOC procedures and does not appear to have affected the disposition of the case.

Petitioner has failed to show that this procedural error by the Board affected the disposition of the case. We find that the trial court did not abuse its discretion in finding that the Board's failure to segregate witnesses was a minor deviation from TDOC procedure.

D. The Petitioner asserts that the Board violated TDOC Policy 502.01(VI)(E)(1)(a) and (VI)(E)(2)(c)(3) when it denied Petitioner the right to be present for the testimony of confidential informants and review confidential documents. TDOC Policy 502.01 (VI)(E)(1)(a) provides:

> The inmate charged with the rule infraction(s) shall have the right to appear in person before the board/hearing officer at all times, except: (a) when the board/hearing officer is receiving testimony from a confidential source.

TDOC Policy 502.01 (VI)(E)(2)(c)(3) provides:

> If the inmate pleads "not guilty", he /she shall be permitted the following:
> (3) The inmate or advisor will be allowed to cross-examine any witness (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information).

In reference to this charge, the trial court's Order stated:

> In determining that the Petitioner was guilty of the charges against him, the disciplinary board relied heavily on confidential information in the form of documentation and testimony from confidential informants. From a reading of the record, it is obvious that there is great concern (such as fear of retaliation on the part of the inmates

and discipline within the institution, to name two concerns) in revealing the identities and addresses of the persons who received money, allegedly from this Petitioner and allegedly from other inmates. The Petitioner was aware of the names of the institution employees who testified as confidential informants. He was also aware that the confidential information presented to the disciplinary board included the names and addresses of persons receiving money from inmates.

Because of the "peculiar circumstances of prison life," it is sometimes necessary for the disciplinary board to hear from confidential informants and obtain confidential information . . . TDOC policy contemplates that there will be times when information cannot be divulged to an inmate charged with an offense.

Based upon the unambiguous terms of TDOC Policy 502.01 (VI)(E)(1)(a) and (VI)(E)(2)(c)(3), the Board did not violate TDOC policy when it denied the Petitioner the right to be present for the testimony of confidential informants and review confidential documents. The trial court did not abuse its discretion in so finding.

E. The Petitioner asserts that the Board violated TDOC Policy 502.01 (VI)(E)(2)(e) when the Board chairperson failed to verify the reliability of the confidential informants. TDOC Policy 502.01 (VI)(E)(2)(e) provides:

When the disciplinary hearing officer/chairperson determines that it should receive testimony from a confidential source whose identity cannot be disclosed due to fear of reprisals, it shall be the disciplinary hearing officer's/chairperson's responsibility to access and verify the reliability of the informant's testimony. Whenever confidential information is utilized by the disciplinary hearing officer/chairperson as a basis for its decision, a Contemporaneous Record of Confidential Informant Reliability, CR-3510, shall be completed to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant's information was reliable. This form shall be considered confidential and kept as a non-public access record in an area designated by the warden.

Reviewing the Order of the trial court, and the record before us, it is clear that the Respondent filed a certified copy of the disciplinary records, which included a CR-3510 form. The CR-3510 form summarizes the content of the testimony of the confidential witnesses who testified before the Board during Petitioner's hearing. The form states that the "reliability of the information was verified [via a] sworn statement before the Board by investigating officer." Thus, the record clearly shows that

the hearing officer did assess the credibility of the confidential informants and the confidential information, and the trial court was correct in its determination that the Board chairperson verified the reliability of the confidential informants.

F. Petitioner asserts that the Board violated TDOC Policy 502.01 (VI)(E)(2)(k) when the Board chairperson failed to prepare a detailed hearing summary. The Petitioner asserts that the Board's failure to prepare a detailed summary, including a transcript of the witnesses testimony, detailed reasons for its decision, and a summary of the evidence it relied on to convict Petitioner, indicates that the Respondent did not have sufficient evidence to prove that he violated the State's money laundering laws. Petitioner argues that convicting him without sufficient evidence is an indication that the Board acted arbitrarily and capriciously and he should be entitled to relief.

TDOC Policy 502.01 (VI)(E)(2)(k) requires that within five days after the conclusion of a disciplinary hearing, the Board must file a CR-1834 form, a Disciplinary Report Hearing Summary. TDOC Policy 502.01 (VI)(E)(2)(k) specifies the information required on the CR-1834, which includes:

> (2) Stating the violation charged, the inmate's plea and the finding of the board/hearing officer.
> (3) Stating the names of all persons who appeared and testified (except confidential sources).
>
> (4) Stating the names of all other persons present at the hearing (except confidential sources).
>
> (5) Stating detailed reasons for the board's/hearing officer's decision and summarizing the evidence which lead to such decision.

Additionally, the CR-1834 form must include whether the inmate waived the 24-hour notice, the right to have the reporting officer present, the right to call witnesses and whether the inmate was provided a copy of the disciplinary report.

The record before us contains the CR-1834 form pertaining to Petitioner's disciplinary hearing, signed by the Board members and dated on January 20, 2004, the same day as Petitioner's hearing. The CR-1834 form includes a list of witnesses, the statement of the accused, and a description of physical evidence as "copies of money orders and withdrawals." Attached to the CR-1834 form is a summary of the witnesses testimony (on form CR-1831). The testimony of the first witness is defined as "confidential information." However, the testimony of the next witness is summarized as "We have withdrawals. The information is reliable, papers in my hand. We have numerous names of money order recipients with same addresses. In our files and with us today."

It is evident from the CR-1834 form, Disciplinary Report Hearing Summary, that the Board relied heavily on confidential testimony and documents in reaching its decision. The fact that the Petitioner was not given access to confidential witness testimony, or allowed to review confidential documents may frustrate the Petitioner, however it is neither a violation of TDOC policy, nor an indication that the Board acted arbitrarily and capriciously. As discussed above, TDOC Policy

502.01 (VI)(E)(2)(c)(3) states that the Board may deny a petitioner the right to be present for the testimony of confidential informants, and refuse to allow a petitioner to review confidential documents. Accordingly, the Board may also exclude the specifics of confidential testimony and physical evidence from its Disciplinary Report Hearing Summary. We find that under the specific circumstances of this case, the Board provided sufficient information on the Disciplinary Report Hearing Summary, and the trial court did not abuse its discretion in so ruling.

G. Petitioner asserts that the Board did not have the authority to impose administrative segregation as an indefinite punishment for the infraction of violating State money laundering laws. Petitioner states that a disciplinary hearing "may result in a recommendation that administrative segregation be imposed, such recommendation must be based on the stated grounds which relate to safety and security, not additional punishment for a disciplinary offense."

Petitioner's assertions are misplaced, as the record before us clearly reveals that the Board did not impose administrative segregation as punishment for the infraction of violating State money laundering laws, rather, the Board only made the recommendation to the Warden that Petitioner be placed in administrative segregation for security reasons, as allowed under TDOC policy. On the Disciplinary Report Hearing Summary it is stated that the Petitioner was to receive 1) receive a $5.00 fine, 2) receive ten days punitive segregation, and 3) recommended for administrative segregation.

The record submitted by the Respondent contains a separate form entitled "Administrative Segregation Placement." On that form, it reads "the Board recommend[s] that Petitioner be housed at the highest level for the safety, and security of this institution." The form also includes the following statement of the Warden:

> After careful review of this recommendation, I must concur with the board. The activities and money transactions involving this inmate and others clearly demonstrate he is a threat to the security of WTSP's general population.

It is clear from the Administrative Segregation Placement form that it was the Warden, not the Board, that made the decision that Petitioner be placed in administrative segregation. We find that the trial court did not abuse its discretion in finding that, pursuant to TDOC policy, the Board did not exceed its authority when the Board recommended for the safety of the institution that the Petitioner be placed in administrative segregation. In summary, we find that the evidence does not preponderate against the trial court's finding that the WTSP Disciplinary Board did not act illegally, fraudulently or arbitrarily.

For these reasons, we affirm the trial court's quashal of Mr. Jackson's petition for writ of certiorari. Costs of this appeal are assessed to the Appellant, Mr. Thomas Jackson and his surety.

_____

W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.