# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs October 4, 2016

## BRYAN R. HANLEY v. TURNEY CENTER DISCIPLINARY BOARD, ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 15-CV-5637    Joseph Woodruff, Judge**
_____

**No. M2016-01223-COA-R3-CV – Filed November 30, 2016**
_____

An inmate was found guilty of possession of a deadly weapon when two knives were found in the door of his cell.  After exhausting his administrative remedies, the inmate petitioned for a common law writ of certiorari asserting several issues relating to violations of due process and the Uniform Disciplinary Procedures.  The trial court granted his petition, denied his discovery request, and dismissed the writ of certiorari.  The inmate now appeals.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., joined. RICHARD H. DINKINS, JJ., filed a dissenting opinion.

Bryan R. Hanley, Only, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Madeline Bertasi Brough, Assistant Attorney General, for the appellees, Turney Center Disciplinary Board, D. Epley, Johnny Qualls, Louanne Dickson, Debra Johnson, Derrick D. Schofield.

## OPINION

### BACKGROUND

On August 4, 2015, Corporal Robert Story ("Corporal Story") and Officer Clint Zyla ("Officer Zyla") found two homemade knives in the door of cell 230 of Unit 2A

located at the Turney Center Industrial Complex ("TCIX" or "the prison").[1]  The prison is a division of the Tennessee Department of Correction ("TDOC").  On the same day, Petitioner/Appellant Bryan Hanley ("Mr. Hanley"), an inmate of the prison and resident of the cell at issue since 2012, was served with a disciplinary write-up for the offense of possession of a deadly weapon.[2]  The incident report describes the offense as follows:

> ON 08/04/15 AT 12:15PM A SEARCH OF 2A 230 WAS PERFORMED BY CORPORAL ROBERT STORY AND OFFICER CLINT ZYLA. TWO HOMEMADE KNIVES WERE REMOVED FROM INSIDE THE DOOR.  ONE ICEPICK STYLE 5″ LONG AND ONE FLAT METAL SHARPENED TO A POINT 9″ LONG.  INMATES GREGORY SNOW . . . AND INMATE BR[Y]AN HANLEY . . . ARE ASSIGNED TO THIS CELL AND ARE BEING CHARGED WITH POSSESSION OF A DEADLY WEAPON AND MOVED TO UNIT FIVE PENDING HEARING. . . . .

Mr. Hanley's disciplinary hearing was held on August 12, 2015, before the Respondent/Appellee Turney Center Disciplinary Board ("disciplinary board").  A disciplinary hearing report included in the record indicates that Mr. Hanley agreed to waive the right to have the reporting official, Corporal Story, present, that the case had been previously continued at Mr. Hanley's request, that Mr. Hanley was assisted by an inmate advisor, and that the "inmate or inmate advisor had adequate time to prepare defense."  Further, the hearing report indicated that Mr. Hanley called one witness: Duane Brooks.  According to the hearing report, Mr. Hanley asserted that he had not been the subject of a disciplinary action in twenty-one years and that the knives belonged to a previous occupant of his cell.  The disciplinary board found Mr. Hanley guilty of the charged offense based on "report" and "evidence presented of [two] knives found in the door of [Mr.] Hanley's cell." The disciplinary board imposed a $5.00 fine, a twelve month package restriction, ten days of punitive segregation to serve beyond the time already served while awaiting the hearing, and a three month reduction in prisoner sentence reduction credits.

On August 16, 2015, Mr. Hanley filed an appeal to the Warden, arguing that the knives found inside his cell door were not his.  Mr. Hanley contended the following: (1) that "numerous staff members [spoke] on [his] behalf and his character"; (2) that he had never been the subject of a disciplinary action in his twenty-one years of incarceration; (3) that the cell doors were not inspected prior to his occupation; (4) that the only cell

---

[1] Although Mr. Hanley alleges in his brief that Corporal Story and Officer Zyla received confidential information that there were knives located in the door of his cell, the incident report mentions no such informant.

[2] Mr. Hanley's cell mate, Gregory Snow, was also charged.

searched was his, based on a confidential informant who could have been the one responsible; and (5) that inmate Brooks testified that he "heard the [knives] found in the door belonged to the previous occupants of the cell." On August 20, 2015, the Warden affirmed the ruling of the disciplinary board, finding that "[n]o violations of disciplinary procedures were cited or ascertained," "[i]nmate has been assigned to the cell for multiple number [of] years," and "[t]he knives wer[e] relativ[e]ly new."

On August 27, 2015, Mr. Hanley filed an appeal to the Commissioner of TDOC, arguing that "Section I(J)(7)"[3] of TCIX Policy 506.06 requires all vacant cells to be searched prior to its occupation by a new inmate. Mr. Hanley asserted that during Mr. Snow's hearing on the same issue, Corporal Story admitted that this policy is not typically carried out. Mr. Hanley further asserted that the knives were not "new"; rather, one was slightly rusted and the other was made of stainless steel which "would never rust in a h[u]ndred years." According to Mr. Hanley, the stainless steel knife was made out of the "old dust mop frames" which had been removed from the prison before he moved into cell 230. Finally, Mr. Hanley contended that he did not possess a special tool to access the inside of the door but that a previous occupant of the cell, who was a maintenance worker, did have access to such a tool. On September 17, 2015, the Commissioner affirmed the ruling of the Warden, concluding that Mr. Hanley failed to support his allegations that the Warden reached an incorrect decision. The Commissioner further found no due process violations in the disciplinary proceedings.

On November 16, 2015, Mr. Hanley filed a petition for a writ of certiorari in the Hickman County Chancery Court, naming the disciplinary board, the Warden of the prison, the Commissioner of TDOC, and numerous other individuals in their official capacities. In his petition, Mr. Hanley alleged several issues relating to the disciplinary board's decision, including violations of due process and deviations from the Uniform Disciplinary Procedures ("UDP"). On January 13, 2016, the disciplinary board filed a notice that it did not oppose the petition. The trial court granted Mr. Hanley's petition for a writ of certiorari on January 19, 2016, and ordered the record of the disciplinary proceedings be transmitted to the trial court. The notice of the filing of the certified disciplinary record was filed on February 19, 2016. TDOC subsequently filed a brief on March 21, 2016.[4] On April 4, Mr. Hanley filed a response brief and a specific request for production of documents. On May 12, 2016, the disciplinary board filed a response opposing Mr. Hanley's specific request for production of documents. On May 18, 2016, the trial court denied Mr. Hanley's discovery request because the requests were "either

---

[3] In his appellate brief, however, Mr. Hanley indicates that the it is section VI(J)(7) in addition to the concurrent TDOC Policy 506.06, §VI(I)(3)(b)–(c). However, these sections are not part of the Uniform Disciplinary Procedures, as discussed *infra*.

[4] The filings for the "Respondent" were either filed in the disciplinary board's or TDOC's name. Regardless, both are represented by the Tennessee Attorney General.

not permissible, not possible, or not needed." On the same day, the trial court entered a memorandum and order dismissing Mr. Hanley's common law writ of certiorari, finding that the disciplinary board "did not act illegally, arbitrarily, or exceed its jurisdiction" and that no due process rights were violated.

## ISSUES

As we perceive it, Mr. Hanley essentially makes several arguments under the umbrella of five broad issues,[5] which we have restated as follows:

1. Whether the trial court addressed all of the issues raised by Mr. Hanley, which implicates this Court's subject matter jurisdiction.
2. Whether the trial court abused its discretion by denying his discovery requests.
3. Whether material evidence supports the disciplinary board's decision.
4. Whether his due process rights were violated.
5. Whether the disciplinary board acted arbitrarily and illegally in failing to follow the UDP.

---

[5] The actual issues listed in Mr. Hanley's brief are:

> 1. The trial court erred when it denied [Mr. Hanley] the opportunity to support his allegations through discovery.
> 2. The trial court erred when it denied [Mr. Hanley] relief on his Writ of Certiorari.
> 3. The disciplinary board acted arbitrarily and illegally in rendering its decision to find [Mr. Hanley] guilty of the charged offense by relying on pure supposition. The disciplinary board determined that the shanks "looked relatively new" and therefore[] were placed in the door relatively recently.
> 4. The disciplinary board acted arbitrarily and illegally in rendering its decision to find [Mr. Hanley] guilty of the offense when the board heard and received uncontradicted testimony from C[orporal] Robert Story that the doors are not searched when cell changes are accomplished, even though TDOC Policy 506.06, VI, I, 3, (b) & (c), and the concurrent TCIX Policy 506.06-1, J, 7 both require cells to be searched and inspected before they are occupied by a new inmate.
> 5. The [disciplinary b]oard acted arbitrarily and illegally in rendering its decision to find [Mr. Hanley] guilty while ignoring the admitted failure of institutional staff to follow applicable policies which are mandatory in nature, thus denying [Mr. Hanley] due process of law and a fair hearing.
> 6. The [disciplinary b]oard acted arbitrarily and illegally when: 1.) they did not follow the basic requirements of Due Process during the hearing, 2.) when making a finding of facts and entering those findings into the record, and 3.) when entering the reasons for their decision.

STANDARD OF REVIEW

The issues in this case involve the review of a decision by a prison disciplinary board. As explained by the Tennessee Supreme Court:

> The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. *See **Rhoden v. State Dep't of Corr.***, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing ***Bishop v. Conley***, 894 S.W.2d 294 (Tenn. Crim. App. 1994)). By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief.

***Willis v. Tenn. Dept. of Corr.***, 113 S.W.3d 706, 712 (Tenn. 2003). The Tennessee Supreme Court reaffirmed the long-standing principal that the standard of review in a writ of certiorari case is extremely limited:

> The judicial review available under a common-law writ of certiorari is limited to determining whether the entity whose decision is being reviewed (1) exceeded its jurisdiction, (2) followed an unlawful procedure, (3) acted illegally, arbitrarily, or fraudulently, or (4) acted without material evidence to support its decision. ***Harding Acad. v. Metro[.] Gov't of Nashville & Davidson Cnty.***, 222 S.W.3d at 363; *see also **Stewart v. Schofield***, 368 S.W.3d 457, 463 (Tenn. 2012). We have explicitly approved the use of the common-law writ of certiorari to provide judicial relief from (1) fundamentally illegal rulings, (2) proceedings inconsistent with essential legal requirements, (3) proceedings that effectively deny parties their day in court, (4) decisions that are beyond the decision-maker's authority, and (5) decisions that involve plain and palpable abuses of discretion. ***State v. Lane***, 254 S.W.3d at 355 (quoting ***Willis v. Tenn[.] Dep't of Corr.***, 113 S.W.3d 706, 712 (Tenn. 2003)). However, we have also held that:
>
> > the common law[]writ [of certiorari] . . . may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity.
>
> ***State ex rel. McMorrow v. Hunt***, 137 Tenn. 243, 249, 192 S.W. 931, 933 (1917).

A common-law writ of certiorari proceeding does not empower the courts to redetermine the facts found by the entity whose decision is being reviewed. *Tenn[.] Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 n.2 (Tenn. 2005); *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Accordingly, we have repeatedly cautioned that a common-law writ of certiorari does not authorize a reviewing court to evaluate the intrinsic correctness of a governmental entity's decision. *See, e.g.*, *Stewart v. Schofield*, 368 S.W.3d at 465; *Arnold v. Tenn[.] Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). Similarly, we have noted that reviewing courts may not reweigh the evidence or substitute their judgment for the judgment of the entity whose decision is being reviewed. *See, e.g.*, *State v. Lane*, 254 S.W.3d at 355 (quoting *Robinson v. Clement*, 65 S.W.3d at 635); *Harding Acad. v. Metro[.] Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d at 363.

*Heyne v. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 729 (Tenn. 2012). "In certiorari proceedings, judicial review is generally limited to the record developed by the tribunal below." *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002). As succinctly stated by this Court:

> At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

*Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). Accordingly, we consider Mr. Hanley's arguments with these limitations in mind.

## DISCUSSION

As an initial matter, we note that Mr. Hanley is proceeding pro se in this appeal as he did throughout the proceedings before the disciplinary board and in the trial court. "It is well settled that pro se litigants must comply with the same standards to which lawyers must adhere." *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary.

> Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at \*3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

## Subject Matter Jurisdiction

We first address whether this Court has appellate jurisdiction over this matter. Mr. Hanley argues that the trial court failed to "address all of the issues presented" by him; instead, the trial court "only peripherally addressed the issues presented" in his trial court brief. Because Mr. Hanley's argument questions whether all of the claims raised in the trial court were actually adjudicated, it implicates this Court's subject matter jurisdiction. Tennessee Rule of Appellate Procedure 13(b) requires appellate courts to "consider whether the . . . appellate court ha[s] jurisdiction over the subject matter, whether or not presented for review." *See Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003) ("Appellate courts must address the issue of subject matter jurisdiction even if the issue is not raised . . . ."). Subject matter jurisdiction concerns a court's authority to hear a particular controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). "Subject matter jurisdiction must be conferred by statute or by the Tennessee Constitution; 'the parties cannot confer it by appearance, plea, consent, silence, or waiver.'" *Fed. Nat'l Mortg. Ass'n v. Quarles*, No. M2015-01620-COA-R3-CV, 2016 WL 5723957, at \*5 (Tenn. Ct. App. Sept. 30, 2016) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 843–44 (Tenn. 2013)). Rule 12.02 of the Tennessee Rules of Civil Procedure states that lack of jurisdiction over subject matter is grounds for dismissal. Tenn. R. Civ. P. 12.02(1). Appellate courts review the issue of subject matter jurisdiction de novo without a presumption of correctness. *See Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712–13 (Tenn. 2012).

Rule 3(a) of the Tennessee Rules of Appellate Procedure states that "every final judgment entered by a trial court from which an appeal lies to the . . . Court of Appeals is appealable as of right." Tenn. R. App. P. 3(a). "To constitute a final judgment, the judgment must adjudicate all of the claims between the parties." *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 834 (Tenn. Ct. App. 2007) (citing *Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at \*2 (Tenn. Ct. App. Feb. 26, 2003)). Therefore, if "multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims . . . is not enforceable or appealable." Tenn. R. App. P. 3(a). Where a trial court order dismissing an inmate's petition for a writ of certiorari fails to address all of the inmate's claims, the order is not a final appealable order. *See Irwin*, 244 S.W.3d 837 (holding that trial court's order dismissing inmate's petition for a writ of certiorari did not adjudicate all claims and thus was not a final, appealable

judgment when it failed to address all of the inmate's claims).  However, this Court may also acquire appellate jurisdiction even where the trial court does not adjudicate all claims raised if the trial court makes the order final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.  Tenn. R. Civ. P. 54.02 ("[T]he [trial c]ourt . . . may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.").    Where the trial court fails to either address all of the inmate's claims or make the order final pursuant to Rule 54.02, the proper remedy is to dismiss the appeal under Rule 3 for lack of appellate jurisdiction and remand, directing the trial court to address the claims raised by the inmate.

We will not tax the length of this Opinion with an examination of each argument raised by Mr. Hanley and the trial court's corresponding decision either in favor of or against that argument. Suffice it to say, we have reviewed the claims raised in this case as well as the trial court's order and find no claims left outstanding that would deprive this Court of subject matter jurisdiction to consider this appeal. In this case, Mr. Hanley sought a writ of certiorari regarding the decision of the disciplinary board. As discussed *supra*, the only avenues of relief from such a decision require that Mr. Hanley show that the decision was illegal, without authority, or based on a palpable abuse of discretion. Here, the trial court found that none of these avenues of relief had been shown and dismissed Mr. Hanley's writ of certiorari. Accordingly, the trial court fully adjudicated all of the claims in this case.

### Discovery Requests

Mr. Hanley next takes issue with the trial court's denial of his discovery requests. As previously discussed, judicial review under a common-law writ of certiorari is typically limited to the record made before the board or agency.  *See Jeffries*, 108 S.W.3d 862 at 873.  However, "the trial court **may** permit the introduction of additional evidence on the issue of whether the board or agency exceeded its jurisdiction[] or acted illegally, capriciously, or arbitrarily." *Adams v. Tenn. Dep't of Corr.*, No. M2013-00370-COA-R3-CV, 2014 WL 4536557, at \*3 (Tenn. Ct. App. Sept. 11, 2014) (emphasis added) (citing *Hunter v. Metro. Bd. of Zoning Appeals*, No. M2002-00752-COA-R3-CV, 2004 WL 315060, \*2 (Tenn. Ct. App. Feb. 17, 2004)); *see also Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983).  Thus, we review the trial court's discovery decisions on appeal for an abuse of discretion. *Johnston v. Metro. Gov't of Nashville & Davidson Cnty.*, 320 S.W.3d 299, 315 (Tenn. Ct. App. 2009) (citing *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 600 (Tenn. Ct. App. 2007)).

The disciplinary board does not deny that discovery may be permitted in certain circumstances but maintains that the trial court properly denied Mr. Hanley's discovery

requests because the documents were not relevant to the issue of whether the disciplinary board exceeded its jurisdiction or acted arbitrarily, illegally, or capriciously.[6] We agree.

In this case, the trial court by order of May 18, 2016, denied Mr. Hanley's specific requests for production of documents because the requests "are either not permissible, not possible, or not needed." Mr. Hanley, however, argues that the additional evidence he sought through discovery would be relevant to the issue of whether the disciplinary board "denied [him] the opportunity to present a defense, refused to consider relevant and germane evidence, refused to address the violations of its own policies by its agents which resulted in the disciplinary proceedings, and otherwise acted illegally, capriciously, and arbitrarily." The documents that Mr. Hanley requested include: (1) records documenting all cell changes conducted on May 29–31, 2013, at the prison; (2) records documenting searches conducted on any cells in several prison units on May 31, 2013; (3) a copy of the minutes from the prison inmate council meeting for August 2015; (4) records listing the names and TDOC numbers of all inmates assigned to cell 230 of unit 2A from January 2010 through May 31, 2012; (5) inmate disciplinary records generated for the inmates assigned to cell 230 of unit 2A from January 2010 through May 31, 2012; (6) the gang status of the inmates assigned to cell 230 of unit 2A from January 2010 through May 31, 2012; (7) a copy of memoranda issued by the prison administrative staff which directed prison employees to gather and remove all stainless steel dust mop heads; (8) a copy of documentation regarding all of the information that Corporal Story received prior to searching Mr. Hanley's cell. Essentially, Mr. Hanley sought to prove that the disciplinary board's decision was in error because the discovery requests would reveal that the knives found in his cell belonged to a prior occupant.

After a thorough review the record, we cannot say that the trial court abused its discretion in denying Mr. Hanley's discovery requests. In the first place, "[t]he rights of

---

[6] Mr. Hanley cites and quotes several cases to support his broad generalization that discovery is allowed in writ of certiorari cases. *See Adams v. Tenn. Dep't of Corrections*, No. M2013-00370-COA-R3-CV, 2014 WL 4536557 (Tenn. Ct. App. Sept. 11, 2014); *Sadler v. Tenn. Bd. of Prob. & Parole*, No. M2001-02341-COA-R3-CV, 2001 WL 1386090 (Tenn. Ct. App. Nov. 8, 2001); *Johnston v. Metro. Gov't of Nashville & Davidson Cnty.*, 320 S.W.3d 299 (Tenn. Ct. App. 2009). Although this is generally true, no prior Tennessee cases have held that discovery is allowed as of right in writ of certiorari cases. Indeed, the cited cases do not purport to grant inmates an unqualified right to discovery; rather, the cases resolved issues not directly presented before this Court. *See Adams*, 2014 WL 4536557, at *3 (reversing the trial court's dismissal of petitioner's writ of certiorari while a motion to compel discovery was pending because its "failure to rule on the pending motion possibly affected the outcome of the litigation"); *Sadler*, 2001 WL 1386090, at *1 (recounting the procedural posture of the case wherein the trial court denied petitioner's motion to compel when petitioner never made a proper discovery request and noted that "petitions for writ of certiorari usually proceed on the record, and that typically, discovery is not permitted"); *Johnston*, 320 S.W.3d at 308, 315 (holding that the trial court did not abuse its discretion in allowing limited discovery while refusing appellants' additional discovery requests). Thus, the cases cited by Appellant do not necessarily support his contention that he should have been allowed discovery under the circumstances of this case.

an inmate who has pled 'not guilty' to the offense which is the subject of the disciplinary hearing are set forth at TDOC Policy No. 502.01(VI)(L)(4)(c) and do not include the right to discovery." ***Jenkins v. Tenn. Dep't of Corr.***, No. M2014-02210-COA-R3-CV, 2016 WL 792423, at \*4 n.3 (Tenn. Ct. App. Feb. 29, 2016). In light of the fact that Mr. Hanley pled not guilty, he is permitted only the following rights at his hearing:

> (1) The right to decline to testify. It shall be the burden of the reporting employee to prove guilt by a preponderance of the evidence.
> (2) To have the evidence against him/her presented first. The board/hearing officer shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law.
> (3) **To cross-examine any witness** (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information).
> (4) To have the reporting official to the alleged infraction present and testifying at the hearing. The chairperson/hearing officer may allow the testimony from the reporting official by speakerphone if they are not on the premises of the facility at the time of the hearing unless this requirement is waived by the inmate in writing . . . . **By waiving the presence of the reporting official, the inmate is agreeing to have the statements in the disciplinary report accepted at the hearing in lieu of testimony.** The chairperson/hearing officer shall advise the inmate of this fact. Even if such an appearance is waived by the inmate, the employee may appear and testify at the hearing.
> (5) The right to testify in his/her own behalf after all evidence has been presented.
> (6) **The right to present the testimony of relevant witness(es)**, unless allowing the witness to appear would pose a threat to institutional safety or order.

TDOC Policy No. 502.01(VI)(L)(4)(c) (emphasis added). Because Mr. Hanley was not permitted discovery during his disciplinary hearing, his only recourse would have been to develop the administrative record through witness testimony.[7] Mr. Hanley not only chose to present only a single witness (Mr. Brooks) but also chose to waive his right to have Corporal Story present to testify against him. Thus, Mr. Hanley also waived any right to cross-examine Corporal Story on the issue of prison searches.

---

[7] Mr. Hanley's only statement in the disciplinary report hearing summary states: "I've never had a disciplinary in [twenty-one] years. I don't know why this came about. I feel like they have been in there since the previous occupant." The statement by Mr. Brooks, the only witness Mr. Hanley called on his own behalf, states: "I don't know who the previous occupants were and I heard it was the ones who lived there before. He's been here a long time. He was my celly and I know he didn't do this."

Additionally, it is well-settled that in a writ of certiorari case, the reviewing court is "generally limited to the record developed by the tribunal below." *Jeffries*, 108 S.W.3d at 873 n.12. The record before us, as in the trial court, contains no indication that the disciplinary board was presented with any allegations or evidence of prison employees' failure to search cells before housing a new inmate.[8] Mr. Hanley's discovery requests appear to be an attempt to supplement the record with additional evidence to show: (1) that the prison did not follow policies concerning searches of cells when inmates are relocated; and (2) in the absence of such a search, the knives found in Mr. Hanley's cell may have been left by its previous occupants. Even if Mr. Hanley were permitted the documents he requested, however, he simply cannot establish that the disciplinary board "refused" to consider relevant evidence or to address violations of its own policies, where no evidence to that effect was in any way presented to the disciplinary board. Furthermore, even where extrinsic evidence is permissible, its only purpose is to show procedural irregularities not reflected in the record, showing "fraud, corruption, or whether the tribunal exceeded its jurisdiction or otherwise acted illegally." *Id.* Here, the documents requested do not relate to the propriety of the disciplinary proceedings but, rather, to the intrinsic correctness of the disciplinary board's decision based on what Mr. Hanley asserts was a flawed investigation. Because this issue was in no way raised in the disciplinary proceedings and the documents are simply not admissible to contradict the disciplinary board's factual findings, we cannot conclude that the trial court abused its discretion in denying Mr. Hanley's discovery requests.

## Material Evidence to Support the Disciplinary Board's Decision

We next consider whether the Mr. Hanley's conviction on the charge of possession of a deadly weapon was supported by sufficient evidence. As previously discussed, review under a writ of certiorari is limited to whether the lower board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently, and whether there is any material evidence to support the board's findings. *Walton v. Tenn. Dep't of Corr.*, No. W2015-01336-COA-R3-CV, 2016 WL 3078838, at *6 (Tenn. Ct. App. May 23, 2016) (citing *Watts v. Civ. Serv. Bd. of Columbia*, 606 S.W.2d 274, 276–77 (Tenn. 1980)). As noted by the Tennessee Supreme Court:

> Ascertaining whether a record contains material evidence to support a board's decision is a question of law. *Leonard Plating Co. v. Metro[.] Gov't of Nashville & Davidson Cnty.*, 213 S.W.3d [898,] 904 [Tenn. Ct. App. 2006]. For the purpose of this inquiry, "material evidence" is relevant evidence that a reasonable person would accept as adequate to support a rational conclusion. *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992) (quoting *Pace v. Garbage Disposal Dist.*, 54 Tenn. App. 263,

---

[8] Instead, this evidence appears to have been presented in a separate disciplinary proceeding involving Mr. Snow, Mr. Hanley's roommate.

267, 390 S.W.2d 461, 463 (1965)). The amount of material evidence required to support an agency's decision "must exceed a scintilla of evidence but may be less than a preponderance of the evidence." ***Leonard Plating Co. v. Metro[.] Gov't of Nashville & Davidson Cnty.***, 213 S.W.3d at 904. Because the sufficiency of the material evidence in a common-law writ of certiorari proceeding is a question of law, the courts must review the record de novo without presuming that the findings are correct. ***Lafferty v. City of Winchester***, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000).

***Heyne v. Metro. Nashville Bd. of Pub. Educ.***, 380 S.W.3d 715, 738–39 (Tenn. 2012).

A disciplinary charge against an inmate must be proven by a preponderance of the evidence, which is "[t]he degree of proof which best accords with reason and probability and is more probable than not." TDOC Policy No. 502.01(IV)(I). Here, Mr. Hanley's disciplinary conviction for possession of a deadly weapon was based on the two knives found in his cell door and Corporal Story's report. Mr. Hanley called one witness, Mr. Brooks, to testify on his behalf. He was also afforded the opportunity to have Corporal Story present at the hearing but waived this right.

As previously discussed, however, this Court cannot weigh the evidence that was adduced at the disciplinary hearing nor can the reviewing court "re-determine the facts found by the entity whose decision is being reviewed." ***Tenn. Waste Movers***, 160 S.W.3d at 520 n.2; ***Cooper v. Williamson Cnty. Bd. of Educ.***, 746 S.W.2d 176, 179 (Tenn. 1987). "It is the function of the prison disciplinary board in the first instance to evaluate the credibility of the witnesses who testify at the hearing." ***Dobbins v. Tenn. Dep't of Correction***, No. M2010-00009-COA-R3-CV, 2010 WL 4225822, at *6 (Tenn. Ct. App. Oct. 25, 2010) (citing ***State v. Brazelton***, No. M1999-02477-CCA-R3-CD, 2000 WL 1717560, at *3 (Tenn. Crim. App. 2000)). Thus, this Court is required to defer to the disciplinary board's determinations of witness credibility. ***Id.***

We conclude that the disciplinary board had material evidence from which to find Mr. Hanley guilty of possession of weapons. At Mr. Hanley's disciplinary hearing, the disciplinary board had before it the two knives found in Mr. Hanley's cell door, Corporal Story's incident report, Mr. Hanley's statement, and Mr. Brooks's statement. The disciplinary board was able to observe the knives first-hand and chose to credit Corporal Story's report over the testimony of Mr. Hanley and Mr. Brooks.

Mr. Hanley's argument that the Warden erred in relying on the "relativ[e] new[ness]" of the knives is also unavailing in this appeal. Here, the two knives undisputedly found during the August 2015 search were presented both to the disciplinary board and the Warden. Based upon their appearance, the Warden specifically found that the knives could not have been placed in the cell door prior to 2012 when Mr. Hanley began residing in the cell. First, we note that Mr. Hanley's argument regarding

the disciplinary board's and the Warden's findings about the condition of the knives relative to the timing of their likely placement is an attack on the intrinsic correctness of the underlying ruling. As previously discussed, however, we have no authority to inquire into the intrinsic correctness of the agency's decision. *See Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *9 (Tenn. Ct. App. July 26, 2001). Even if we were permitted to consider this argument, Mr. Hanley has presented no evidence from which we could conclude that the Warden erred on this issue. The record on appeal contains no pictures of the knives or descriptions thereof to contradict the Warden's finding other than Mr. Hanley's unsubstantiated assertions. It is well-settled, however, that unsupported, unsworn statements are not evidence. *See, e.g., Dayhoff v. Cathey*, No. W2011-02498-COA-R3-JV, 2012 WL 5378090, at *3 (Tenn. Ct. App. Nov. 1, 2012); *In re D.M.H.*, No. W2006-00270-COA-R3-JV, 2006 WL 3216306, at *7 (Tenn. Ct. App. Nov. 8, 2006). Accordingly, this argument is, respectfully, without merit.

Still, Mr. Hanley argues that the disciplinary board acted arbitrarily and illegally in rendering its decision to find him guilty of the offense when the disciplinary board purportedly heard and received uncontradicted testimony from Corporal Story that the doors are not searched when cell changes are accomplished in violation of TDOC Policy and TCIX policy. This argument is, respectfully, unavailing. As discussed *supra*, the record is devoid of any evidence that Corporal Story actually testified at Mr. Hanley's hearing before the disciplinary board. Indeed, the hearing summary contains a statement purported to be signed by Mr. Hanley waiving the right to have the reporting official present. There is no indication at all that this piece of evidence was presented to the disciplinary board at the August 12, 2015 disciplinary hearing. The first mention of it in the record can be found in Mr. Hanley's disciplinary report appeal to the Commissioner on August 27, 2015, in which he alleged that "[d]uring the hearing of **[Mr.] Snow [Mr. Hanley's cellmate]** on this issue, C[orporal] Story was asked specifically if [the prison employees] search inside the [cells'] doors and when a cell becomes empty before a new inmate is assigned and his testimony was '[w]e do NOT typically do this.'"

Under the UDP, "[b]y waiving the presence of the reporting official, the inmate is agreeing to have the statements in the disciplinary report accepted at the hearing in lieu of testimony." TDOC Policy No. 502.01(VI)(L)(4)(c)(4). Because Mr. Hanley waived his right to have Corporal Story present to testify against him, Mr. Hanley also waived the right to cross-examine Corporal Story and thereby develop the record in his case. Despite Mr. Hanley's contention otherwise, the record before us simply contains no such testimony.[9] Even assuming arguendo that the disciplinary board did hear this testimony

---

[9] Thus, we pretermit any other issues raised based on Mr. Hanley's allegations of the disciplinary board's failure to consider Corporal Story's testimony that prison employees failed to search cell doors prior to the occupation of a new inmate, including any violations of due process and deviations from the UDP.

during Mr. Snow's hearing, the board is entitled to consider only the evidence presented during Mr. Hanley's hearing for purposes of sanctioning him.[10] *See* TDOC Policy No. 502.01(VI)(L)(4)(k) ("The disciplinary board . . . shall base the decision solely on the information obtained during the hearing process, including staff reports, the statements of the inmate charged as well as his/her advisor, and any other evidence derived from witnesses and documents."). Thus, we cannot say that the disciplinary board acted arbitrarily and illegally by only considering the evidence presented to it at the hearing.

Therefore, we conclude that the evidence of the two knives found in Mr. Hanley's cell door and Corporal Story's report stating that the knives were found in Mr. Hanley's cell door constitute material evidence to support the conviction of possession of a deadly weapon.

## Due Process

Mr. Hanley next alleges denial of due process rights. Prisoners are entitled to the protections of due process, depending on the circumstances:

> The Fourteenth Amendment's Due Process Clause protects individuals by guaranteeing fair procedure. *Littles v. Campbell*, 97 S.W.3d 568, 572 (Tenn. Ct. App. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)). "'In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Id.* (quoting *Zinermon*, 494 U.S. at 125). A claim is not actionable unless the State fails to provide due process; thus, we must first determine what process is due, if any, and whether such process has been afforded. *Id.* (citation omitted).

> The United States Supreme Court has stated that only those restraints to a prisoner's liberty interest which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are actionable under the Due Process clause. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). "Once a court determines that the restraints imposed upon the prisoner's liberty are indeed 'atypical' and a 'significant hardship,' the court must next determine what type of process is constitutionally required." *Littles*, 97 S.W.3d at 572. Pursuant to *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed.

---

[10] We note that Mr. Hanley never argued res judicata, collateral estoppel, or any other related theories entitling him to use evidence presented and established at another inmate's hearing. We also decline to consider whether he would have succeeded on these theories.

2d 935 (1974), the Due Process Clause requires that inmates subject to disciplinary proceedings be afforded: "(1) written notice of any charges made against the prisoner at least twenty-four (24) hours before a hearing is held; (2) the opportunity to present witnesses; (3) an impartial tribunal; and (4) a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken." [*Littles*, 97 S.W.3d at 573–74] (citing *Nevills v. S. Cent. Corr. Disciplinary Bd.*, No. M2000-02324-COA-R3-CV, 2001 WL 1117066, at *13 (Tenn. Ct. App. Sept. 25, 2001)).

*Patterson v. Tenn. Dep't of Corr.*, No. W2009-01733-COA-R3-CV, 2010 WL 1565535, at *2 (Tenn. Ct. App. Apr. 20, 2010).

In this case, Mr. Hanley was found guilty of the charge of possession of a deadly weapon. Among the penalties the disciplinary board imposed was the loss of three months of Mr. Hanley's prisoner sentence reduction credits. "[T]he loss of previously earned sentence reduction credits has been found to implicate an interest sufficient to invoke due process." *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct .App. July 26, 2001) (citing *Greene v. Tenn. Dep't of Corr.*, No. 01A01-9608-CH-00370, 1998 WL 382204, at *3 (Tenn. Ct. App. July 10, 1998) (footnote omitted)); *see also Garrard v. Tenn. Dep't of Corr.*, No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at *7 (Tenn. Ct. App. May 8, 2014) (concluding that the loss of three months of prisoner sentence reduction credits entitled appellant to due process protections). Because Mr. Hanley's liberty interests have been implicated in this case, he was entitled to the due process protections outlined above. *See Himes v. Tenn. Dep't of Corr.*, No. M2011-02546-COA-R3-CV, 2012 WL 7170480, at *4 (Tenn. Ct. App. Dec. 6, 2012) (finding that the loss of sentence reduction credits was sufficient to implicate due process).

Mr. Hanley argues that his due process rights were violated because the disciplinary board failed to include in its hearing report "a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken." *Littles*, 97 S.W.3d at 573–74. As explained by the United States Supreme Court:

[T]here must be a "written statement by the factfinders as to the evidence relied on and reasons" for the disciplinary action . . . . Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without

- 15 -

written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.

*Wolff*, 418 U.S. at 565–65 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972)).

The disciplinary record contains a summary of the disciplinary hearing. This summary includes a section wherein the disciplinary hearing members are to include such a written statement. In the portion of the form in which the disciplinary hearing panel is to state its "findings of fact and specific evidence relied on to support those findings," the summary states "[g]uilty based on report + evidence presented of [two] knives found in the door of [Mr.] Hanley's cell." Further, in the portion of the form in which the disciplinary board is to state its "disposition and a statement of the reasons which support[] that decision" the summary states the penalty that will be assessed to Mr. Mr. Hanley. Although succinct, the hearing summary does contain some basis for the disciplinary board's decision to convict Mr. Hanley. *Compare Garrard*, 2014 WL 1887298, at *10 (holding that petitioner's due process rights were violated when "[n]othing in the summary indicates that the disciplinary hearing panel made any findings of fact or offered any of its reasons for its decision"), *with Williams v. Little*, No. M2010-02241-COA-R3CV, 2011 WL 4058897, at *4 (Tenn. Ct. App. Sept. 13, 2011) (finding that the contents of the hearing summary was adequate when it indicated that the disciplinary board's decision was based on information obtained during an investigation of a state employee who brought contraband into the prison and identified petitioner as the prisoner to whom he brought the contraband) *and Schaffer v. Tenn. Dep't of Corr.*, No. M2010-01742-COA-R3-CV, 2011 WL 1842971, at *5 (Tenn. Ct. App. May 12, 2011) (concluding that due process requirements were satisfied when the disciplinary board provided only "findings of fact and specific evidence relied upon to support those findings" in its completed disciplinary report hearing summary). Accordingly, although we do not encourage the practice utilized in this case as it provides only a skeletal basis for the disciplinary board's decision, the procedure utilized by the disciplinary board did not violate Mr. Hanley's due process rights.

## Uniform Disciplinary Procedures

Finally, we will consider Mr. Hanley's argument relating to whether the disciplinary board otherwise acted arbitrarily or illegally in failing to follow TDOC's UDP. According to this Court:

[E]ven if a state prisoner is not entitled to due process protections in a disciplinary proceeding, the inmate may nevertheless assert a claim under a common-law writ of certiorari that the prison disciplinary board otherwise acted illegally or arbitrarily in failing to follow TDOC's [UDP]. *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 (Tenn. Ct. App. Aug. 13, 2007) (citing *Willis*, 113 S.W.3d at 713).

*Patterson*, 2010 WL 1565535, at \*2. "A prisoner seeking judicial review of a disciplinary proceeding has the burden to prove 'that the disciplinary board failed to follow the [UDP] and this failure substantially prejudiced the petitioner.'" *Walton*, 2016 WL 3078838, at \*6 (quoting *Willis*, 113 S.W.3d at 713).   The UDP exists "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy No. 502.01(II); *Meeks v. Tenn. Dep't of Corr.*, No. M-2007-01116-COA-R3-CV, 2008 WL 2078054, at \*3 (Tenn. Ct. App. May, 15, 2008). Minor deviations from the procedures will not warrant dismissal of the disciplinary action unless the prisoner demonstrates "substantial prejudice as a result and the error would have affected the disposition of the case." TDOC Policy No. 502.01(V); *Meeks*, 2008 WL 2078054, at \*3. "To trigger judicial relief, a departure from the [UDP] must effectively deny the prisoner a fair hearing." *Jeffries*, 108 S.W.3d at 873. Thus, an inmate may be entitled to relief under a common law writ of certiorari if he demonstrates that the disciplinary board failed to adhere to the UDP and that its failure to do so resulted in substantial prejudice to the inmate. *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 (Tenn. Ct. App. 2007).

Mr. Hanley mainly takes issue with the disciplinary board's failure to verify the informant's reliability as required by the UDP.[11]  Under the UDP:

Whenever confidential information or confidential security sensitive evidence is utilized by the disciplinary hearing officer/chairperson as a basis for its decision, the TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510, shall be completed to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant and/or security sensitive evidence was reliable. At privately managed facilities, the Commissioner's designee shall also review the confidential information and initial the form. This form shall be considered confidential and kept as a non-public access record in an area designated by the Warden.

TDOC Policy 502.01, § VI, L, (4)(g).

---

[11] Mr. Hanley also takes issue with the prison's failure to conduct searches pursuant to TDOC Policy 506.06 and the prison's local policy 506.06-1.  However, because these policies are not part of the UDP, as previously discussed, any deviations from those policies are not grounds for reversal.

In this case, the record contains no indication that a confidential informant was ever involved. Even assuming arguendo that Corporal Story did receive confidential information, as Mr. Hanley suggests, we fail to see how the disciplinary board deviated from the UDP when the disciplinary board based its decision to convict Mr. Hanley, not on the report of a confidential informant, but instead **only** on Corporal Story's report and the two knives found in the cell door. The UDP requires the completion of a CR-3510 form only when the disciplinary board used the confidential information as a basis for its decision. As previously discussed, Mr. Hanley's conviction was "[b]ased on report + evidence presented of [two] knives found in the door of [Mr.] Hanley's cell." Thus, we conclude that the disciplinary board did not act arbitrarily and illegally because it was under no obligation to complete a CR-3510 form in this case.

## CONCLUSION

The judgment of the Hickman County Chancery Court is affirmed and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant, Bryan Hanley, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE